FOWLER & WOLFE MFG. CO. v. McCRUM–HOWELL CO.

(District Court, S. D. New York. January 15, 1913.)

PATENTS (§ 328*)—VALIDITY—RADIATOR.
   The Fowler patent, No. 609.800, for a radiator, claims 1–4 *held* void for anticipation and lack of novelty.

In Equity. Suit by the Fowler & Wolfe Manufacturing Company against the McCrum-Howell Company. On final hearing. Decree for defendant.

Ernest Howard Hunter, of Philadelphia, Pa., for complainant.
D. Walter Brown, of New York City, for defendant.

HOLT, District Judge. This is a suit to restrain the infringement of a patent, No. 609,800, granted to Arthur H. Fowler for an improvement in radiators. The first four claims only of the patent are alleged to be infringed. The patent claims, in substance, two distinct improvements, the first of which is stated to be a radiator specially adapted to be supported by the wall or wainscot, and to be composed of cast-iron sections of uniform size and shape that can be assembled to form a radiator of any length or width, requiring practically no floor space. The first four claims of the patent relate to this portion of the invention, and are the only ones relied upon in this suit. The main object of that part of the invention involved in this suit, as stated in the patent, is to construct a radiator specially adapted to be sup-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ported by the wall or wainscot, and to have it constructed in cast-iron sections, so arranged as to be joined together, and thus build up a radiator of any length or width. The first and second claims relate to the shape of the section, and the third and fourth claims relate to the method of joining different sections together. The first claim is as follows:

"1. A radiator section composed of a unitary hollow casting, consisting of four outer tubes communicating with one another at the corners, one or more intermediate cross-tubes between opposite outer tubes, and a series of connecting tubes between each intermediate cross-tube and the opposite outer tube or adjacent intermediate cross-tube."

The second claim is very similar. This claim obviously is not confined to a wall radiator, and I cannot see why, in the nature of the case, it is of any consequence how any radiator is supported. They are ordinarily supported on the floor. I do not see why any radiator could not be supported on a wall as well as on the floor, and there is nothing in the structure described in the first two claims of the patent which makes it more applicable to a wall radiator than to a floor radiator. One of the sections could serve separately as a radiator, and the only advantage for wall use of the radiator described in the patent is that such a radiator may be composed of different sections connected together, and which may be disposed in different directions at will upon a wall or about a window. Looking at the first two claims as they stand, however, they simply claim a structure which seems to have been long anticipated in the prior art. It is shown substantially in the patents to Reed, Safford, Wood, and in the Bundy Pyro wall radiator. It is also suggested in the somewhat analogous art of boiler making in the boiler used as a radiator in the Exeter Machine Works.

There was a prior suit brought upon this patent against a licensee, who, of course, could not deny the validity of the patent. The licensee was dealing in a radiator which was substantially in shape like the radiator described in the complainant's patent, except that its various connecting tubes were substantially of about the same size. In that case Judge Buffington originally held on a motion for a preliminary injunction that the defendant's radiator was substantially the same as the complainant's radiator, but upon final hearing he held that, in view of the prior art, the complainant's invention was a very narrow one, and that the claims must be interpreted in the light of the specification and drawings, which stated and showed that the top and bottom tubes were larger than the cross-tubes, and that the cross-tubes were larger than the small intermediate cross-tubes, and held that, as the defendant's radiator was not so constructed, it did not infringe. Some of the witnesses for the complainant in the case at bar lay stress on the fact that, as shown in the drawings and described in the specifications, the outside tubes are larger than any of the intermediate tubes, and the intermediate cross-tubes are larger than the tubes between the cross-tubes, and claim that such a construction is important in aid of the rapid diffusion of steam throughout all parts of the radiator, and the effective expulsion of air and water from the radiator. But the answer to all these assumptions based upon the different sizes of the

tubes shown in the drawings and described in the specifications is that no claim is made in the patent of any invention in those respects. The first and second claims in the patent apply to a unitary hollow casting consisting of tubes, and, if the claims are good, they give a monopoly of the use of such a unitary structure with tubes of any size. The fact that the specifications describe a structure with tubes of different sizes is, of course, immaterial. An invention described in specifications, but not claimed, is not protected by a patent. As the first two claims are drawn, in my opinion, they are anticipated by the patents cited and by the condition of the prior art.

The third and fourth claims relate to the method of uniting different sections of the unitary hollow casting described in the first two claims, so as to extend the size of the radiator in any direction. In my opinion, that feature of the complainant's invention is anticipated by the Hopson and Daniels patent. If it had not been, it seems to me very doubtful whether it requires anything more than mechanical skill to provide for connecting such castings one to another by an opening at the corners, as is described in the third and fourth claims.

This patent was rejected for want of novelty, after repeated amendments, by the primary examiner in the Patent Office. The case was appealed to the board of examiners in chief. I cannot clearly make out from their decision, which appears in the record in the case against the National Radiator Company (page 286), what the grounds of their decision are. After describing the questions in controversy, the decision states:

"Claims 1 and 2 are rejected as expressing, when but one cross-tube E is used, a duplication of a radiator section of the Mills patent. This we do not find to be the fact. Nor can we concur in another ground for rejection of these claims, that the 'cross-tubes serve no other function than that of radiating elements, and the particular form thereof is arbitrary.' The patents to Farnham, Blackmore, and Packer are cited to show a frame work with cross-tubes. They do not show the structure of these claims which is new has specific utilities and is clearly patentable."

With entire respect for the board of examiners in chief, I am not able to see why claims 1 and 2 do not express, when but one cross-tube is used, a duplication of a radiator section of the Mills patent, and in my opinion it is true, as the primary examiner stated, that the cross-tubes serve no other function than that of radiating elements. I concur with the primary examiner that the complainants' patent, on the citations which were before the board, should have been rejected for want of novelty. But, at all events, there are a number of patents cited upon this hearing which were not cited upon the hearings in the Patent Office, notably the patents of Reed, Safford, and Wood, as bearing upon the questions involved in the first two claims, and the patent to Hopson & Daniels, as bearing upon the questions involved in the third and fourth claims, and, in view of those patents, it seems to me clear that these claims of the complainant's patent are invalid for want of novelty.

The bill is dismissed, with costs.